## WILLIAM J. HUBBARD & others *vs.* PRESIDENT, DIRECTORS &c. OF THE HAMILTON BANK.

An attachment of the property of a bank, made before the bank commissioners ap plied for an injunction, under *St.* 1838, *c.* 14, § 5, to restrain the bank from further proceeding with its business, was not dissolved by the subsequent appointment of receivers, pursuant to the provisions of that statute, to take possession of the property and effects of the bank.

THIS was a petition by the receivers of the Phœnix Bank, appointed under the provisions of *St.* 1838, *c.* 14, praying that the Hamilton Bank might be enjoined and restrained from further prosecuting a certain suit at law against said Phœnix Bank ; and that the attachment made in that suit might be dissolved and declared void, &c.

The Phœnix Bank stopped payment on the 3d of October 1842; and afterwards, on the same day, the respondents com menced an action against said bank, and caused an attachment to be made of its real and personal estate. This action was entered in the court of common pleas in Suffolk county, at March term 1843, and was pending when the present petition was filed. On the 6th of October 1842, one of the justices of the supreme judicial court issued an injunction, on the application of the bank commissioners made on that day, to restrain said bank from further proceeding with its business, until a hearing could be had. After a hearing of said bank, viz. on the 18th of October 1842, the supreme judicial court made the injunction perpetual, and appointed the petitioners to be re- ceivers to take possession of the property and effects of said bank. See *St.* 1838, *c.* 14, § 5.

The respondents submitted themselves to the jurisdiction of the court, but denied that they ought to be enjcined and

restrained from prosecuting their said suit against the Phœnix Bank, or that their said attachment ought to be dissolved and declared void.

This case was argued in June 1843.

*W. J. Hubbard*, for the petitioners.

*C G. Loring*, for the respondents.

DEWEY, J.   The receivers of the Phœnix Bank have filed their petition praying this court to enjoin the President, Directors and Company of the Hamilton Bank from further prosecuting a suit at law in which they are plaintiffs, and the said Phœnix Bank defendants; and particularly, that a certain attachment of the estate of the said Phœnix Bank, made by virtue of such process, may be dissolved.   The power of the court to entertain such petition in a proper case is not questioned, and seems to be well authorized by the Rev. Sts. *c.* 44, § 9.   The inquiry then arises, whether the facts stated in the present case will authorize the interference in the manner prayed for.   The petitioners acquired their interest in the estate of the Phœnix Bank by virtue of proceedings instituted, under the provisions of *St.* 1838, *c.* 14, § 5, upon an application made to this court, on the 6th of October 1842, by the bank commissioners, for an injunction against said Phœnix Bank and the appointment of receivers to take the control of its assets.   Previously to these proceedings, however, viz. on the 3d of October 1842, the Hamilton Bank had instituted an action against the Phœnix Bank, to recover a debt due from the latter, and caused an attachment of the estate of the same to secure the amount of the alleged debt.   It is this attachment, thus made, that the petitioners seek to have dissolved.   This leads us directly to the consideration of the effect to be given to an injunction upon a banking corporation, and the appointment of receivers under *St.* 1838, *c.* 14; and in connexion therewith, and as the material inquiry in the present case, to consider the nature and effect of an attachment on mesne process, and to what extent such attachment constitutes a lien or incumbrance upon the assets of the bank.

· The power and authority of receivers, appointed under the

29 *

provisions of the statute referred to, are not distinctly defined by this statute ; but it is provided in general terms, that one of the justices of this court "may appoint agents or receivers to take possession of the property and effects of the corporation, subject to such rules and orders as may from time to time be prescribed by the supreme judicial court, or any justice thereof in vacation." It has been supposed, however, and as we think correctly, that the extent of the power and duties of receivers, appointed under this statute, may be inferred from the more full provisions of the Rev. Sts. *c.* 44, § 8, authorizing the appointment of receivers for banking corporations whose charters have expired. The provision is in these words : "To be receivers or trustees of and for such corporation, to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation ; and to do all other acts which might be done by such corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation."

There is no express provision, in the statutes cited, dissolving existing attachments, upon the transfer of the property of the corporation to receivers, similar to that found in the general insolvent law ; (*St.* 1838, *c.* 163, § 5 ;) and if such effect follows, it results from general principles governing cases of this nature, rather than by force of any special enactments.

Originally, an attachment on mesne process seems to have been instituted merely for the purpose of compelling the appearance of the defendant in court to answer to the suit. But as early as 1650, attachments were authorized for the additional purpose of securing the payment of such judgment as might be recovered in the action. The colonial ordinance of 1650 was thus : "It is hereby ordered by this court, and the authority thereof, that henceforth, all goods attached upon any action shall not be released upon the appearance of the party, or judgment, but shall stand engaged until the judgment, or the execution granted upon such judgment, be discharged." Anc. Chart. 51. The same provision was substantially reënacted in 1659, with this limitation : "Where execution is not taken out and

executed within one month after that judgment is granted, all such attachments shall be released and void in law, unless the court that granted the judgment shall see cause to give further time." Anc. Chart. 193.

The *St.* of 1784, *c.* 28, provided that all goods and estate, attached upon mesne process for the security of the debt or damages sued for, should be held for the space of thirty days after final judgment, to be taken on execution. Thus the law continued until the revision of the statutes of the Commonwealth, when, by Rev. Sts. *c.* 90, §§ 23 – 25, it was enacted, that all real estate and all personal estate, attached upon the original writ, " shall be held as security to satisfy such judgment as the plaintiff may recover," with the former limitation of thirty days after judgment rendered, for the service of the execution.

In this connexion it may be proper to notice, that in order to secure the dissolving of an attachment, even in case of the death of the defendant, it has been thought necessary to provide therefor by statute ; and that such dissolution of an attachment is limited to cases where some person shall, within one year after the debtor's decease, make application for administration, and obtain it on such application. *St.* 1822, *c.* 93, § 6. Rev. Sts. *c.* 90, § 105.

These various statutes, authorizing a party thus to acquire, not indeed a property in the estate attached, but merely a charge or incumbrance, of a peculiar character, seem to have been uniformly considered by this court as conferring upon the party thus attaching a right in the nature of a lien. Thus in *Grosvenor* v. *Gold,* 9 Mass. 210, 211, Sedgwick, J. says, " by an attachment a plaintiff has a lien upon the subject of it provisionally, that is, to the amount of the judgment he may finally recover ; and in so much is the absolute property of the defendant diminished." In *Fettyplace* v. *Dutch,* 13 Pick. 392, it was said by the court, " an attachment constitutes a lien." So in *Arnold* v. *Brown,* 24 Pick. 95, the court say, " an attachment constitutes a mere lien on the property. The effect of the sale " of the same afterwards by the defendant " will be to pass the general property incumbered by the attachment " In

*Smith* v. *Bradstreet*, 16 Pick. 264, it was held that an attachment of property would authorize the attaching creditor to appear, as a party in interest, to oppose the probate of a will devising the premises attached to another person in exclusion of the heir at law, as whose estate it was attached.

In this Commonwealth, I apprehend that there would have been little diversity of opinion as to the effect of an attachment in creating a substantial lien or incumbrance, but for the opinion supposed to have been expressed by Mr. Justice Story, in his very elaborate and learned discussion of this subject in *Foster's case*, 5 Law Reporter, 55, and 2 Story R. 131. Some intimations, made in that case, seemed to present the question of a lien by an attachment in a different light; but in *Parker's case*, 5 Law Reporter, 351, and 2 Story R. 334, the learned judge explained his views more fully, and held that an attachment was valid and effectual against the assignee of a bankrupt, when the defendant in the action had, before filing his petition in bankruptcy, consented to a default of the action at a future day, and had agreed upon the amount of damages. In a still later case, *Cook's case*, 5 Law Reporter, 443, and 2 Story R. 376, Judge Story seems to admit, that after judgment is rendered in the action, the right under the attachment becomes perfect. The effect of the decision in the case last cited seems to be to leave the matter thus; that an attachment constitutes a valid lien upon the property, not defeated by an act of bankruptcy, or proceeding in bankruptcy, unless the defendant in the action can avail himself of his discharge in season to defeat the rendition of any judgment against him. If he can do this, he can of course indirectly defeat the attachment. [See also *Fiske* v. *Hunt*, 2 Story R. 582.]

That an attachment creates a valid lien, was held also in the district court of the United States for the district of Vermont, in *Downer* v. *Brackett*, 5 Law Reporter, 392, decided in 1842. It was there ruled, that an attachment on mesne process binds the lands or goods attached, during the time fixed by law, as effectually as a judgment binds in England. See also *Haughton* v *Eustis*, 5 Law Reporter, 505. In New Hampshire, the ques-

tion has been very recently considered in the case of *Kittredge* v. *Warren,* 7 Law Reporter, 77, and the doctrine, that an attachment constitutes a lien, fully sustained — in a case where the question was raised as to the proper construction to be given to the saving clause in the United States bankrupt act of 1841 — in a very able and learned opinion of Chief Justice Parker.

We are satisfied, that under the laws of Massachusetts an attachment is a lien or incumbrance upon the property attached. It fastens itself upon the property, and whoever takes the property, takes it *cum onere.* It is constantly spoken of as a *lien* in the books of reports, in the arguments of the bar, and in the opinions of the bench. It is not a lien in that sense which requires the party to be in possession of the property thus incumbered or charged with it. An attachment of real estate does not require a change of possession. But that does not make it the less a lien in the sense which we attach to that term. Such would be the case of all liens under judgments, where judgments create a lien. The only distinction to be taken between the cases of lien by attachment and lien by a judgment is, that in the latter the debt is ascertained and fixed ; the party has proceeded one step further in the series of acts necessary to give effect to his lien. But does this really make the cases to differ, where nothing subsequently occurs to prevent the plaintiff from proceeding with his action so far as to terminate it by a judgment in his favor ? Where such judgment is actually rendered, it gives effect to the attachment, and every thing relates back to the time when the attachment was made. A judgment in England and in New York does not give any actual legal estate in the property attached, but a lien that operates to vest such title upon a seizure and transfer on execution ; and which, when perfected, relates back to the time of the judgment.

But it is further urged, that if such be the rule of law as to the nature and effect of an attachment, yet it is a lien capable of being dissolved ; and that by the force and effect of an injunction issued by this court against the Phœnix Bank, and the appointment of receivers to take the control and management of the assets of the bank, for the benefit of all concerned, the

attachment was *ipso facto* dissolved.　This position is supposed
to be sustained by the general course of reasoning and the views
expressed in the opinion given in the case of *Atlas Bank* v.
*Nahant Bank*, 23 Pick. 480.

It is true, that the general equity that would result from the
dissolution of a particular lien, and the appropriation of the entire
assets as a fund for distribution among all the creditors *pro ratâ*,
was strongly presented in that opinion.　But the legal question
in that case arose upon a state of facts quite dissimilar to the
present.　That was a case of an attachment, by an individual
creditor, of the assets of the bank, made after the filing of the
bill asking for an injunction on the bank and the appointment
of receivers; and the court held that the transfer of the prop-
erty to the receivers necessarily removed the property from all
future liability to attachment at the suit of an individual cred-
itor, and that the proceedings had relation back to the time of
the filing of the bill.　But the court gave no opinion upon the
question now raised.　We think that there is a manifest dis-
tinction between the case of an attachment before, and one
made after proceedings instituted, praying for an injunction and
the appointment of receivers.　In the latter case, the attachment
is ineffectual, the property is in other hands, and beyond the
process of an attachment.　But in the former, a valid attach-
ment has been made, and hence it will bind the property ; and
though the assets pass into the hands of the receivers, they take
them with all the liens thereon ; and an existing attachment is
a lien.

In looking into the adjudicated cases, where questions some-
what similar have arisen elsewhere, we think that it will be
found that no such effect has been given to general assignments,
for the benefit of all the creditors, as to hold them effectual to
defeat a lien acquired by an individual creditor before the insti-
tution of proceedings for the creditors generally.　Thus in
*M'Dermutt* v. *Strong*, 4 Johns. Ch. 691, it was said by the
chancellor, though it was the favorite policy of the court to dis-
tribute the assets among creditors, *pari passu*, yet where a pref
erence had been established by the superior legal diligence of

any creditor, that preference should be observed in the distribution of assets. So in *Corning* v. *White*, 2 Paige, 567, it was held that an assignment, after the lien of a creditor had attached by the filing of a creditor's bill, only conveyed the property to the assignee subject to that lien; that the filing of the creditor's. bill operated as an attachment of property which could not be levied on at law, and gave to the vigilant creditor a right of priority; and that an assignment under the insolvent laws, after the commencement of the suit, only gave to the assignee a right to the surplus after payment of the individual creditor who had filed the bill, on his own account, to enforce payment of his individual debt. A creditor's bill, when filed and subpœna issued, gives a lien over a subsequent assignment under the insolvent laws. *Eager* v. *Price*, 2 Paige, 333. *Hadden* v. *Spader*, 20 Johns. 554. In a case of the filing of such creditor's bill, it was also held by Conklin, J., in the district court of the northern district of New York, in the *Matter of Allen*, 5 Law Reporter, 362, that the lien thereby acquired was not divested by the decree in bankruptcy.

It seems therefore quite clear, that there is nothing in the nature of the process by injunction against the Phœnix Bank, and the appointment of receivers, which necessarily dissolves an attachment of the assets of the bank previously made. There is nothing in the principle of equal distribution among all creditors *pro ratâ*, which has been considered powerful enough to set aside the priority already acquired by a vigilant creditor. There is nothing in our statutes declaring such previous attachments to be dissolved by force and effect of the appointment of receivers. The result must be, therefore, that the lien acquired by attachment continues, notwithstanding such proceedings under the *St.* of 1838, *c.* 14, to be available, if the party prevails in his action, and levies his execution within the time prescribed by law. The attachment, as such, is good and effectual; and the property attached must, in the language of the revised statutes, " be held as security to satisfy such judgment as the plaintiff may recover.'

The prayer of the petition must therefore be denied.