## The United States *vs.* Graff.

An action, by the United States, for the recovery of a sum of money claimed to be due and owing to the plaintiff, for unpaid duties upon imported goods, may be brought in a state court.

The primary object of such an action is not simply to execute the laws of the United States, but to collect a debt by enforcing an obligation due to it.

And in that class of cases, the United States, as a body politic, can maintain an action in a state court, in the same manner as other states and sovereignties may sue.

In the affidavit upon which an attachment, in such an action, was issued, it was stated that the defendant had "imported and brought into the United States, at the port of New York," the goods upon which the duties had accrued. *Held*, that these words amounted to an allegation of an importation of the goods by the defendant, complete in its nature, with the control and possession of the property actually in him.

*Held*, also, that by importing the goods, the defendant had become indebted to the plaintiff for the amount of the duties ; and that the law would infer that he intended and promised to pay the same.

*Held*, further, that to enforce that liability an attachment might be issued.

A former action for the same cause, commenced in another court, is no bar to a subsequent one, where it appears that no process was ever served in such former action, upon the defendant, and hence the court acquired no jurisdic-

United States *v.* Graff.

tion over the person; and that the attachment against property, issued therein, has been vacated.

It is the duty of a sheriff, acting under an attachment, to attach the real and personal estate of the debtor. And that can only be done by taking it into his custody, where the property is tangible in its character.

Hence, an order directing a sheriff, under an attachment, to open a safe and tin box containing the property and securities of the defendant, on deposit in a trust company, and to take therefrom and safely keep the property and evidences of debt, liable to attachment, found therein, is not improper.

Such safe and box are not within the protection which the law affords to a debtor's dwelling house, against an officer acting under civil process. They are simply places of deposit and safe keeping, which the sheriff may enter to make the seizure required by law, in the execution of the process.

An order directing the exclusion of the counsel and agents of each party, at the time of the opening of a safe containing the property and securities of the defendant, by the sheriff, is a proper exercise of the discretion of the court.

THE defendant appeals from so much of the order made by the Special Term at Chambers as denied his motion to vacate an attachment issued against his property in this action, and directed the sheriff to open a safe of the Mercantile Trust Company, and a tin box, in which it was claimed he had property and securities on deposit. The Mercantile Trust Company appeals from so much of such order as directs the sheriff to open the safe and tin box and take from them, and keep, the property and evidences of debt liable to attachment found therein; and the plaintiff appeals from the part of the order directing the exclusion of counsel and agents of each party, at the time of opening such safe, by the sheriff. (*S. C., briefly reported,* 4 *Hun,* 634.)

*S. G. Clarke,* for the defendant.

*Alexander & Green,* for the Trust Company.

*Edmund H. Smith,* for plaintiff.

*By the Court,* DANIELS, J. This action was brought for the recovery of a sum of money claimed to be due

and owing to the plaintiff for duties unpaid on silks imported from a foreign country into the United States, by the defendant. It was strenuously insisted, in support of his appeal, that the court had no jurisdiction over the case, by reason of its supposed want of authority to enforce the laws of the government of the United States. How far such an objection should be allowed to extend it is not necessary to determine in this case. For, the primary object of this action is not simply to execute the laws of the United States, but to collect a debt by enforcing an obligation due to it. And in that class of cases the United States, as a body politic, can certainly maintain an action in this court, the same as other states and sovereignties may. (*Delafield* v. *State of Illinois*, 26 *Wend.*, 192. 2 *Hill*, 159. *United States* v. *Dodge*, 14 *John.*, 95. *Same* v. *White*, 2 *Hill*, 59. *State of Michigan* v. *Phœnix Bank*, 33 *N. Y.*, 9.) Under the rule which these authorities maintain, no reason exists for doubting the jurisdiction of this court over the present action.

The cause of action set forth in the complaint in this suit is the amount claimed to be owing to the plaintiff for the duties upon eight cases of piece silk, imported and brought into the United States, within the state and county of New York, from Hamburg, in Germany. And the facts out of which it arose are imperfectly set forth in the affidavit on which the attachment in the action was issued. This affidavit was objected to as insufficient, principally on account of the defective statement of facts contained in it. And while it cannot be commended in this respect and in a case of so much importance, it must yet be held that its defects are not so substantial as to require a dismissal of the attachment. It appears from the statement made in it that on or about the sixteenth of October, 1874, the defendant imported and brought into the United States, at the port of New York, from Hamburg in Germany, by

the steamship Cambria, eight cases of piece silks subject to duties to the plaintiff to the amount of eighteen thousand dollars in gold; and that the same had not been paid by him. It is objected that because an importation may, under certain circumstances, be made within the laws of the United States, while the goods may still remain under its control and subject to its authority, before the duties can lawfully be required to be paid; that this may have been a transaction of that character. One answer to this objection arises upon the circumstance that those importations are somewhat exceptional in their nature, and the statement made in the affidavit contains nothing warranting the conclusion that this was a transaction of that nature. On the other hand the description given of it is that of an importation complete in its nature, with the control and possession of the property actually in the defendant. That is the ordinary signification of the words used, that he had "imported and brought into the United States, at the port of New York," the goods on which the duties had accrued. And under the circumstances of the case they should be understood in that sense.

By giving that construction to them it does appear, from the affidavit, that the defendant had completely imported the goods mentioned in it. He had brought them into the United States, and by that act availed himself of the privilege which the laws conferred upon, and secured to, persons importing property only on the payment of the duties prescribed. By doing that he had become indebted to the plaintiff for the amount of the duties; and the law will infer that he intended and promised to pay it. He derived a benefit from those laws by reason of his act, for which a fixed equivalent has accrued and become due from him. The affidavits produced on the part of the defendant tend to show that no such goods were imported on the Cambria. But their effect was entirely overcome by others read on

the part of the plaintiff indicating a decided probability that the defendant did import the goods, but probably designed, in doing so, to evade the payment of the duties upon them. By that act, even if he had shown it as a fact, the law would not permit him to shield himself against liability for their payment. For it does not permit a party to protect himself against his ostensible obligations by alleging his own wrong, by way of defence.

The case should now be disposed of on the facts disclosed in the affidavit on which the attachment was issued. And from them an obligation to pay the duties was made to appear; and consequently a promise to make such payment will be inferred in favor of the plaintiff. It has been said to be a familiar principle of law, that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do. (1 *Pars. on Cont.*, 5th ed., 4.) And in *Ogden* v. *Saunders* (12 *Wheat.*, 213,) it was held, by Marshall, C. J., that "a great mass of human transactions depends upon implied contracts, upon contracts which are not written, but which grow out of the acts of the parties." In such cases the parties are supposed to have made those stipulations which as honest, fair and just men they ought to have made. When the law assumes that they have made these stipulations, it does not vary their contract, or introduce new terms into it, but declares that certain acts unexplained by compact impose certain duties, and that the parties have stipulated for their performance. And in this spirit it holds, in favor of individuals, that corporations agree to perform the duties enjoined, for their benefit, upon them. (*New York and New Haven R. R. Co.* v. *Schuyler*, 34 *N. Y.*, 30, 83, 84.) The principle has also been applied to the non-payment of duties under the revenue laws of the United States. (*Meredith* v. *United States*, 13 *Peters*, 486.) In that case it was stated by Mr. Justice Story,

that importers of goods become by the act of importation personally indebted to the United States, for the duties due thereon. And he added that it was the opinion of the court, "that the duties due upon goods imported constitute a personal debt and charge upon the importer, as well as a lien on the goods themselves." (*Id.*, 493–4.)

The defendant's counsel still farther objected that even though that might be the law, an attachment could not regularly be issued to enforce the liability. And the case of *McCoun* v. *N. Y. Central R. R. Co.*, 50 *N. Y.*, 176,) was relied upon as sustaining that proposition. But that case did not involve this point. The question there was simply as to the proper form of notice to be inserted in a summons in an action for the recovery of a penalty. And the court intimated a decided opinion that it should not be a notice that the plaintiff would enter judgment for the amount claimed, without an application to the court if the defendant failed to answer the complaint.

Very different considerations, required by the history and object of the section providing for what demands attachments may be issued, have been applied to its construction. To promote the efficiency of that remedy, it has been held to include actions on contracts for the recovery of even unliquidated damages, where a proper disclosure of the grounds of the claim supplies practicable means for determining its amount. (*Lawton* v. *Reil*, 34 *How. Pr.*, 465. *Clews* v. *Rockford &c. R. R. Co.*, 2 *Hun*, 379.) And this demand is within the section, under that construction. It was also insisted that the attachment should be vacated because a preceding action for the same cause was commenced in the United States District Court for the southern district of New York. But that action is entitled to no such effect in this case, for the reason that no process in it was ever served upon the defendant, so that the court never ac-

quired jurisdiction over his person. And the attachment issued in it against his property was vacated before the seizure was made under that issued in this action. There was no other action pending when the motion was made to set aside the attachment in this case; and that was sufficient to defeat the objection based upon the existence of another suit for the recovery of the same demand. (*Averill* v. *Patterson*, 10 *How. Pr.* 85.)

There was nothing improper in that portion of the order made which directed the sheriff to open the safe and tin box containing the defendant's property. The process could be effectually served in no other way. It was the duty of the officer acting under it immediately to attach the real and personal estate of the debtor. And that could only be done by taking it into his custody, where the property was tangible in its character. (*Wait's Code*, 407, § 232, *and note*. *Haggerty* v. *Wilber*, 16 *John.*, 287. *Goll* v. *Hinton*, 8 *Abb.*, 120. *Smith* v. *Orser*, 42 *N. Y.*, 132.)

Neither the safe nor the tin box constituted any portion of the defendant's dwelling, and they were not within the protection which the law affords to that against an officer acting under civil process. They were simply places of deposit and safe keeping for the defendant's property, which the sheriff may enter to make the seizure required by law, in the execution of the process in his hands. If that were not so, there would be nothing to prevent a failing or insolvent debtor from turning all his property into valuable securities or other articles requiring but little space for their custody, and then placing them in the hands of a safe deposit company for preservation, and defying all the efforts of his creditors to satisfy their debts by resorting to them. That would form an expedient for the success of fraudulent devices, which might render the laws of the state for the collection of debts entirely powerless. No such effect could be given to a deposit of that nature without

United States *v.* Graff.

at once defeating the object plainly designed to be secured by the law in rendering the debtor's property liable to the process issued in favor of his creditors in actions brought to recover their just debts. Against that, his dwelling alone is secured against the intrusive action of the officer. And, that in no sense, can be so far extended as to include either the safe or tin box in the custody of the Mercantile Trust Company, for the defendant. A case has been presented on the points relied upon by the company's counsel, supposed to be in conflict with this conclusion. It arose under the laws of Pennsylvania. And it was there held that the company could not be required to furnish a certificate of the contents of the safe, because they were virtually in the possession of the lessee. It is not necessary to consider the point whether this decision was properly made; for if it was, then it is very clear that the only way in which the debtor's property, held in that manner, can be rendered liable to the owner's creditors, is by seizure under the attachment issued to the sheriff. If a certificate cannot be obtained showing the property so held for the debtor, and it cannot be seized under attachment or execution, then certainly the creditors are deprived of all ordinary means for applying it to the satisfaction of their debts. And an effectual mode would be at last discovered for enabling a debtor to withhold his property from his creditors. The law has not yet, and probably will not very soon, lend its aid to the success of such an expedient for the protection of a debtor's property against the clearly defined rights of his creditors.

The appeal of the Mercantile Trust Company certainly cannot be sustained.

The portion of the order from which the plaintiff has appealed was clearly right. Without it the obligation would rest upon the officer to prevent the process he was required to execute from being converted into an instru-

ment of investigation and discovery of the debtor's private papers. Such a use of it would be an abuse requiring the punishment of the officer permitting it to be done, under color of process delivered for an entirely different and lawful purpose. The order did no more than declare the duty of the officer, as the law defined it. It was a very proper exercise of the discretion of the court. And if any doubt shall arise in his mind as to its proper application and construction, he will be at liberty to apply to the court for more specific instructions.

The order should be affirmed, but, under the circumstances, without costs.

Order affirmed.

[FIRST DEPARTMENT, GENERAL TERM at New York, May 3, 1875. *Davis, Brady* and *Daniels,* Justices.]