Arnold v. Weimer.

---

CARL A. ARNOLD ET AL. V. DAVID F. WEIMER.

FILED APRIL 17, 1894. No. 5586.

1. **Receivers**: ATTACHMENT: BANKS. The property of an insolvent bank, prior to the appointment of a receiver therefor or putting the sheriff in possession thereof by order of a court or judge, is not exempt from seizure by attachment or other legal process at the suit of its creditors.

2. **Attachment Lien.** The lien acquired by the levy of an attachment upon the property of an insolvent bank is not vacated by the subsequent appointment of a receiver for such bank.

3. **Receivers**: INSOLVENT BANK. The receiver of an insolvent bank takes the assets thereof incumbered with all valid liens thereon which attached prior to his appointment.

4. **Judgments**: RECEIVERS: INTERVENTION. The receiver of an insolvent bank who intervenes in an action to which said bank is a party, thereby submits himself to the jurisdiction of the court in which such suit is pending, and can only review the judgments and rulings of such court in the same manner as any other litigant.

ERROR from the district court of Custer county. Tried below before HARRISON, J.

*George H. Hastings, Attorney General, J. S. Kirkpatrick,* and *Hutchinson & Dickinson,* for plaintiffs in error.

No briefs filed.

RAGAN, C.

On, and some time prior to, the 13th day of November, 1891, Charles Kloman and Carl Arnold (hereinafter called "the bank") were associated together as partners under the name of Kloman & Arnold, and conducting a general banking business in the city of Broken Bow, Custer county, Nebraska. David Weimer was a depositor in said bank, and on said date it was indebted to him in the sum of $2,414.56. On said date he brought a suit in the district court of Custer county against said bank, caused an attachment to be issued and levied upon certain real estate belonging to said bank. Afterwards, one George W. Goodell was, by an order of this court, appointed receiver of said bank, and he filed a motion in said suit brought by Weimer against the bank in the district court of Custer county to discharge said attachment. This motion the district court overruled, sustained the attachment, and ordered the attached property to be sold. The receiver has filed a petition in error in this court to reverse said order.

The receiver alleged in his motion to dissolve said attachment, as his grounds therefor, that at the time of the levy of the writ of attachment the bank had been closed by order of the officers of the "state banking board," and that the property seized by the attachment was at the time in the hands of a receiver, and in the hands of the officers of the "state banking board of Nebraska," and was not subject to attachment.

The motion to dissolve the attachment was tried by the district court on a stipulation of facts. From this stipulation it appears that Weimer's attachment was levied upon the real estate by the sheriff of Custer county on the 13th of November, 1891; that the bank was then unable to pay its obligations; that before noon of said day the bank suspended business and posted on its doors a notice as follows: "Bank closed. In hands of receiver. Depositors

will be paid in full;" that on the morning of said date the manager of said bank telegraphed to the "state banking board" that the bank was closed and asked the board to send a receiver; that on the 14th of November the bank was duly examined by an examiner appointed by the "state banking board;" and that on the 19th of November Goodell was by this court appointed receiver of said bank.

The real contention of the receiver is that after the bank suspended business and closed its doors on the 13th, its property was not subject to attachment at the suit of a creditor, but that all the bank's assets from that moment became a trust fund to be divided *pro rata* among all the bank's creditors; or, if the property of the bank was subject to attachment on the 13th, then the appointment of a receiver on the 19th vacated the attachment. If the contention of the receiver is correct, it must be so because of some express statute or arise by operation of law from the fact of the receiver's appointment. We have been cited by counsel to no statute, nor have we been able, after a careful search, to find a statute which exempts the property of an insolvent banking association from an attachment at the suit of the creditors; nor that divests the lien of an attachment already levied by reason of the appointment of a receiver thereafter for such association.

It is said by the receiver that under the banking act, chapter 8, Compiled Statutes, 1893, the district court of Custer county had no jurisdiction over the bank or its property, and that the only remedy a creditor of said bank had for the collection of his debt was to await the appointment of a receiver, the winding up of the affairs of the bank by that officer, and the distribution of the bank's assets. We do not agree with either of these contentions. By section 9, article 6, of the constitution the district courts are given both chancery and common law jurisdiction and such other jurisdiction as the legis'ature may provide; and by section 34, chapter 19, Compiled Statutes, 1893, the

legislature has provided that the district courts shall have and exercise general, original, and appellate jurisdiction in all matters, both civil and criminal, except where otherwise provided. There is nothing in the banking act, or any other statute, which forbade the district court of Custer county from entertaining jurisdiction of Weimer's suit against this bank; nor is there anything in the banking act which expressly, or by implication, compels the creditor of an insolvent banking institution to await the appointment of a receiver thereof for the collection of his debt against such association. The legislature may have the authority to say that from the moment a banking association becomes insolvent that its property shall not be liable to an attachment at the suit of one of its creditors, but it has not said so. The legislature may have the authority to provide that an attachment levied upon the property of an insolvent banking association shall be vacated upon the appointment of a receiver thereof, but it has not said so.

Another argument of the receiver is that inasmuch as the assets of a national bank are not liable to be attached at the suit of a creditor, the legislature must have intended, by the enactment of the banking law of this state, that the assets of an insolvent banking association from the moment of its insolvency should occupy the same status as the assets of an insolvent national bank. If the legislature had intended by the banking act to render the property of an insolvent bank exempt from an attachment at the suit of one of its creditors it would doubtless have said so. The national banking act expressly provides that the United States shall have a first and paramount lien upon all the assets of the bank, and that no attachment shall be issued against said association or its property till final judgment rendered in the suit brought.

Counsel for the receiver cite us to *State v. Commercial State Bank*, 28 Neb., 677, as an authority for their contention. In that case one McConaughy was a large stockholder in the

Commercial State Bank. He, McConaughy, became in-
solvent and made an assignment to the sheriff for the bene-
fit of his, McConaughy's, creditors. The sheriff took pos-
session of not only McConaughy's property, but claimed
the right to the possession of the assets of the bank as well.
The attorney general made application to this court for the
appointment of a receiver for the assets of the bank. The
sheriff, as McConaughy's assignee, resisted the application,
claiming that McConaughy owned all the stock in the
bank. The court, by the present chief justice, NORVAL,
held, in effect, that although McConaughy was the owner
of the majority or all the stock of the corporation, he did
not thereby become the corporation, and that while his
assignee could hold his, McConaughy's, property, the as-
signee had no claim to the assets of the bank; that they
were a trust fund for the payment of its debts, and that the
rights of the creditors to the bank's property were superior
to the rights of the stockholders and the assignee of the
stockholders thereto. Nothing in that case supports the
contention made by the receiver. There being no statutory
provision which exempts the property of this bank from
attachment at the suit of one of its creditors prior to the
appointment of a receiver therefor, or possession taken by
the sheriff under section 268, Code of Civil Procedure, and
no provision vacating an attachment already levied upon
the appointment of a receiver for its assets, we proceed to
inquire what right or title the receiver acquired to the prop-
erty attached by virtue of his appointment. Section 212
of the Code of Civil Procedure provides that the order of
attachment shall bind the property attached from the time
of the service of the order. The order of attachment in
Weimer's case was issued on the 13th day of November,
1891, and the property attached on that day by the sheriff.
In Beech, Receivers, section 202, it is said: "It is a
general rule that the receiver obtains title subject to all
liens previously acquired, but this rule is applicable only

·to property which is subject to levy and sale under execution. As to other property, such, for example, as equitable interests, the commencement of the action for the appointment of a receiver creates a lien in favor of the plaintiff." The real estate attached at the suit of Weimer was subject to levy and sale under execution. The legal title to this property was in the bank.

A question very similar to the one at bar arose and was·decided in *Hubbard v. President and Directors of the Hamilton Bank*, 48 Mass., 340. In that case the Phœnix Bank stopped payment on the 3d day of October, 1842, and afterwards, on the same day, the Hamilton Bank brought a suit against the Phœnix Bank in the common pleas court in Suffolk county, had an attachment issued and levied upon the real and personal property of the Phœnix Bank. On the 6th of October, "on the application of the bank commissioners," the supreme court of Massachusetts issued an injunction restraining the Phœnix Bank from transacting any further business until a hearing could be had. On the 18th of October the supreme court appointed a receiver to take possession of the assets of the Phœnix Bank. The receivers then filed a petition in the supreme court praying it to enjoin the Hamilton County Bank from further prosecuting its suit at law against the Phœnix Bank and to dissolve the attachment levied upon the property of the Phœnix Bank. The court by Dewey, justice, said: "This leads us ·directly to the consideration of the effect to be given to an injunction upon a banking corporation, and the appointment of receivers under the statute, and in connection therewith, and as the material inquiry in the present case, to consider the nature and effect of an attachment on *mesne* process and to what extent such attachment constitutes a lien or incumbrance upon the assets of the bank. The power and authority of receivers appointed under the provisions of the statute referred to are not distinctly defined by this statute, but it is provided, in general terms, that one

of the justices of this court 'may appoint agents or receivers
to take possession of the property and effects of the corpora-
tion, subject to such rules and orders as may from time to
time be prescribed by the supreme judicial court.' * * *·
There is no express provision in the statutes cited dissolv-
ing existing attachments upon the transfer of the property
of the corporation to receivers similar to that found in the
general insolvent law, and if such effect follows, it results
from general principles governing cases of this nature
rather than by force of any special enactment. * * *
We are satisfied that under the laws of Massachusetts an
attachment is a lien or incumbrance upon the property at-
tached. It fastens itself upon the property, and whoever
takes the property takes it *cum onere*. It is constantly
spoken of as a lien in the books of reports, in the argu-
ments of the bar, and in the opinions of the bench. It is
not a lien in that sense which requires the party to be in
possession of the property thus incumbered or charged
with it. An attachment of real estate does not require a
change of possession, but that does not make it the less a
lien in the sense which we attach to that term. * * *
But it is further urged that if such be the rule of law as
to the nature and effect of an attachment, yet it is a lien
capable of being dissolved, and that by the force and effect
of an injunction issued by this court against the Phœnix
Bank, and the appointment of receivers to take the control
and management of the assets of the bank for the benefit
of all concerned, the attachment was *ipso facto* dissolved.
* * * We think that there is a manifest distinction be-
tween the case of an attachment before and one made after
proceedings instituted praying for an injunction and the
appointment of receivers. In the latter case the attach-
ment is ineffectual, the property is in other hands and
beyond the process of an attachment; but in the former,
a valid attachment has been made, and hence it will bind
the property; and though the assets pass into the hands

of the receivers they take them with all the liens thereon, and an existing attachment is a lien.  *  *  *  It seems therefore quite clear that there is nothing in the nature of the process by injunction against the Phœnix Bank and the appointment of receivers which necessarily dissolves an attachment of the assets of the bank previously made. There is nothing in the principle of equal distribution among all creditors *pro rata,* which has been considered powerful enough to set aside the priority already acquired by a vigilant creditor.   There is nothing in our statutes declaring such previous attachments to be dissolved by force and effect of the appointment of receivers." To the same effect see *Von Roun v. Superior Court of San Francisco,* 58 Cal., 358; *Walling v. Miller,* 108 N. Y., 173.

In *Breene v. Merchants & Mechanics Bank,* 17 Pac. Rep. [Col.], 280, the Merchants & Mechanics Bank suspended payment on the afternoon of the 30th day of January, 1884.   It was then, and had been for some time, insolvent.   At the time it closed its doors it was indebted to Breene in the sum of $7,000, and on that day he brought a suit against the bank to recover the amount due him and caused an attachment to be issued and levied upon the assets of the bank.   Six days later, on application of the stockholders, one Talbot was appointed receiver for the bank.   He intervened in the suit brought against the bank by Breene and filed a motion to dissolve the attachment. The supreme court of Colorado held that the creditors of insolvent corporations, as those of other insolvents, have no equitable liens superior to an attachment unless a court of equity lawfully assumes jurisdiction before such attachment; and reversed the judgment of the district court, which had dissolved the attachment on the motion of the receiver.

The lien acquired by Weimer on the real estate of the bank by the levy of his attachment thereon was not dissolved by the appointment of a receiver to take charge of

the assets of the bank, and as Weimer's lien was acquired prior to the appointment of the receiver, that officer took the property attached incumbered with the lien.

There are a few things which remain to be said of this case. The record before us does not show how the receiver became a party to the suit brought by Weimer against the bank. We presume that he made application to the district court to be made a party. We are led to this remark because the receiver seems to be under the impression that by reason of the fact that he was appointed receiver of the assets of the bank by this court, he is not subject to the rules governing other litigants. In the case brought by Weimer against the bank in the district court the receiver was entitled to be made a party to the action; but he owed it to that court to make a formal application for that purpose; and when he was once a party to the suit he submitted himself to the jurisdiction of the court, and whatever steps he desired to take in the case he was compelled to take under the same rules and regulations as any other litigant. The stipulation of facts on which the court below tried the motion to dissolve the attachment is in the record here, but is not incorporated into any bill of exceptions. For that reason alone we might have affirmed the judgment of the district court. After the district court had overruled the motion of the receiver to discharge the attachment the receiver applied to this court for, and obtained, an injunction restraining the sheriff of Custer county from selling the real estate attached by Weimer. This injunction we ought not to have granted. If the receiver desired to stay the execution of the order of the district court and prevent a sale of the property attached, he had a plain and adequate remedy at law by filing in this court, with his petition in error, a supersedeas bond.

We have deemed it our duty, notwithstanding the failure of the receiver to comply with the matters alluded to above, to dispose of this case upon its merits; still we think it

but justice to receivers to call their attention here to the fact that when they intervene in an action pending in any court, that they occupy then the position of any other litigant.    The judgment of the district court was right and is

AFFIRMED.

HARRISON, J., having presided in the court below, took no part in the decision.