WILLIAM DODSON v. C. E. WIGHTMAN, THE BANK OF TRIBUNE, AND THE STATE OF KANSAS.

**No. 244.**

1. ATTACHMENT—*possession which divests the defendant's possession is a sufficient levy.* Under section 197 of the Code, an attachment levy on personal property is sufficient and valid if the officer with the order of attachment in hand goes to the place where the goods and chattels of the defendant are found, and there declares, by virtue of said order, that he attaches such property at the suit of the plaintiff, and thereupon takes such possession as divests the defendant's possession and gives to the officer a claim of dominion, coupled with the power to exercise it, over the attached property.

2. ——— *appraisement need not be made immediately upon the.* It is not essential to the validity of an attachment levy so executed, that an appraisement of the attached property should be immediately made.

3. BANK COMMISSIONER—*must take actual possession of bank before action for a receiver will lie.* Under chapter 43, Laws of 1891, it was necessary for the Bank Commissioner to take actual personal possession of the property and assets of an insolvent bank as a condition precedent to the institution of an action by the Attorney General for the appointment of a receiver for such bank; and the property of an insolvent bank, prior to the taking of such actual possession by the Commissioner, was subject to seizure by attachment or other legal process at the suit of its creditors.

4. ATTACHMENT—*not void because appraisement cannot be made.* An attachment levy should not be held wholly invalid because of the fact that the appraisement includes certain chattels which the officer and the appraisers have not seen and cannot see because the same are locked in a bank safe of which they do not have the combination.

836　　DODSON v. WIGHTMAN.

S. Dept.　　　　Opinion.　Milton, J.　　　.6 Kan. App.

Error from Greeley District Court. Hon. J. E. Andrews, Judge. Opinion filed July 29, 1897. *Reversed.*

*W. M. Glenn* and *Quinton & Quinton,* for plaintiff in error.

*L. C. Boyle,* Attorney General, for the State.

MILTON, J. The defendant C. E. Wightman, for a number of years, had conducted a bank, known as the Bank of Tribune, which was owned entirely by him. Being insolvent, he appeared before the Bank Commissioner at Topeka on September 23, 1896, and stated that he had come for the purpose of surrendering to the Commissioner the possession of the Bank, and that he desired that the Commissioner should go immediately to Tribune and take actual and personal possession of the Bank and all of its assets. Wightman then gave to the Commissioner a statement of the financial condition of the Bank, showing its insolvency, and, as the Commissioner testified, delivered and surrendered possession of said Bank to the latter so far as it was possible for him to do. On September 24, and while Wightman was in Topeka conferring with the Commissioner, the plaintiff in error brought an action in the District Court of Greeley County to recover $594.06, which he alleged he had on deposit in the Bank. An attachment order was issued at the commencement of the action, and the sheriff purported to levy the same at fifteen minutes past three o'clock on the afternoon of the same day. The sheriff's return on this order shows that at the time named he executed the order by going to the place where certain personal property of the defendant was found — naming among other articles a burglar-proof

DODSON v. WIGHTMAN. 837

July 29, 1897.     Opinion.   Milton, J.          W. Div.

safe and all its contents — and there declaring that he attached said property at the suit of plaintiff.

The return of the sheriff as to the inventory and appraisement of the property is regular in all respects except that it shows an appraisement of the safe and its contents, when, as a matter of fact, the safe had not been and could not be opened by the sheriff when the appraisement was made. The appraisement did not state the nature of the contents of the safe, and both were appraised together at seven hundred dollars. The appraisement is dated September 28, and it was filed, together with the order of attachment, on October 3. The sheriff and appraisers obtained their information as to the contents of the safe from Wightman.

Before the attachment was levied, the attorney for the plaintiff had knowledge of the fact that Wightman had gone to Topeka to turn the Bank over to the Commissioner, but the evidence does not show whether or not the plaintiff had such knowledge. Wightman returned to Tribune on the morning of September 25, and the Commissioner arrived there at noon the same day. The sheriff or his deputy had remained in charge of the attached property and in control of all the property of the Bank from the time the levy was made, and the Commissioner was unable to take actual possession of the same.

Before starting for Topeka, Wightman left the following notice with a person in Tribune :

"TRIBUNE, KAN., September 23, 1896.
"This bank has been placed in the hands of the Bank Commissioner, who will take charge, probably, Friday. I will return with him.
C. E. WIGHTMAN."

This notice was posted on the door of the Bank soon

838    DODSON v. WIGHTMAN.

S. Dept.              Opinion.  Milton, J.              6 Kan. App.

after the sheriff took possession under the writ of attachment. The Bank Commissioner testified that he made a demand upon the sheriff for the possession of the property, and that, if he had not been prevented by the sheriff, would have taken possession of all the notes, books, moneys and all other property of the Bank that was contained in the safe at that time. The property which was attached consisted of various articles of office furniture, and the safe and its contents.

At the request of the Bank Commissioner, the Attorney General, on October 2, 1896, instituted an action in the District Court of Greeley County, in the name of the State on relation of the Attorney General, as plaintiff, against C. E. Wightman, as the owner of the Bank of Tribune, for the purpose of procuring the appointment of a receiver of the Bank and for the winding up of its affairs under the provisions of the Banking Law. On October 5, the plaintiff and four other attaching creditors jointly applied to the judge of the District Court, at chambers, for the appointment of a receiver to take charge of the attached property, and on the same day the State of Kansas, by the Attorney General, presented to said judge a motion for the discharge of the several attachments which had been levied upon the bank property. These motions were considered together, and the evidence relating thereto was presented on the same day. The motion to discharge the attachment set forth substantially that no sufficient levy of any of the writs of attachment had been made; that none of the writs had been levied on the 25th day of September, when the Bank Commissioner demanded possession of the property; that all of the property attached was owned by the defendant Wightman in connection with the Bank

DODSON v. WIGHTMAN.                    839

July 29, 1897.        Opinion.   Milton, J.          W. Div.

of Tribune, and constituted a part of the assets of the Bank, which was insolvent at the time of the pretended levy of the writs and prior thereto; that said property was in the hands of the Bank Commissioner at the time of the levy of the writs; and that a suit had been commenced in the District Court of Greeley County by the Attorney General to have a receiver appointed to wind up the affairs of said Bank.

The foregoing facts were developed on the hearing, and the additional fact was developed that the Bank of Tribune had never obtained authority from the banking department to do business, although it had been making reports regularly for two or three years. The judge discharged the attachments and ordered the sheriff to turn over the property to C. H. Adams, whom he then and there appointed receiver in the case brought by the Attorney General. Plaintiff in error excepted to the action of the judge, and, by due and timely proceedings, the order discharging the attachment is before us for review.

It is claimed on the part of the State that the case-made is insufficient because it fails to show that it contains all the evidence that was introduced on the hearing of the motion. While it is true that no single specific statement to this effect is made, we think the case-made shows that all the evidence is contained therein. It is also claimed that the case-made is insufficient because it does not contain the attachment undertaking. This is not material, as we must presume that the clerk of the court complied with the law in respect to the issuance of the order of attachment. The appraisement seems to be regular except as to the contents of the safe, and it is not important that it was not completed until several days after the levy was made.

840 DODSON·V. WIGHTMAN.

S. Dept. · Opinion. Milton, J. 6 Kan. App.

Two questions are presented : *First*, was the Bank of Tribune in the hands of the Bank Commissioner at the time of the levy ? *Second*, was the levy valid and sufficient ?

I. As to the first question, we think it could not be claimed by any one that the Bank Commissioner was given actual personal possession of the property by virtue of the attempted delivery thereof made by Wightman in the city of Topeka. Nor do we see how it could be maintained that there was a constructive delivery of the bank property at that time and place. In fact, the Attorney General does not make this contention in his brief. We think that the words "take charge," as used in section 26 of chapter 43, Laws of 1891, are to be understood in the ordinary sense, that is, that the Commissioner shall take actual charge of the bank by going to the institution and there assuming control. We are strengthened in this view by reason of the fact that the Banking Law of 1897, which repeals said chapter 43, makes it the duty of the Commissioner immediately to take charge of a bank when it shall appear to be insolvent, and upon taking charge to ascertain as soon as possible, by thorough examination into its affairs, its actual condition, and, if thus convinced that such bank cannot resume business or liquidate its indebtedness to the satisfaction of all its creditors, to report the fact of its insolvency to the Attorney General, who shall thereupon immediately institute the proper proceedings for the appointment of a receiver. It is evident that "take charge" and "taking charge," as used in this law, have the meaning we have above indicated, as it would be impossible for the Bank Commissioner to examine into the affairs of an insolvent bank without having control of its books and prop-

DODSON v. WIGHTMAN. 841

July 29, 1897.     Opinion.   Milton, J.              W. Div.

erty generally. Section 29 of the law of 1897 pro-
vides another method for placing the affairs and
assets of a bank under the control of the Bank
Commissioner, that is, by posting on its front door
the following notice: "This bank is in the hands of
the State Bank Commissioner." Said section further
provides, that "the posting of such notice or the ta-
king possession of any bank by the Bank Commis-
sioner shall be sufficient to place all its assets and
property of whatever nature in the possession of the
Bank Commissioner and shall operate as a bar to any
attachment proceedings."

It is contended by the Attorney General that, under
the Banking Law of 1891, the property in controversy
was not subject to attachment at the instance of the
Bank's creditors, and that the general attachment laws
are suspended whenever the same are inconsistent, or
in conflict with, the said Act. It will be proper to bear
in mind that this Bank was not authorized to do busi-
ness, and that any general doctrine as to public policy
in respect to authorized banks would not be applicable
to the Bank in question. Hence we think the decision
of the Supreme Court of California in *Crane v. Pacific
Bank* (106 Cal. 64, 39 Pac. Rep. 215), which is cited
by the Attorney General, is not applicable to this case.
In view of the fact that the last Banking Act provides
that the posting of the notice above set forth shall
operate as a bar to attachment proceedings, the con-
clusion seems proper that the Legislature did not hold
that considerations of public policy under the old law
would be sufficient to bar attachment proceedings, and
therefore the old law was amended in that respect.
The Supreme Court of Nebraska, in the case of *Arnold
v. Weimer* (40 Neb. 216, 58 N. W. Rep. 709), holds that
the property of an insolvent bank, prior to the ap-

pointment of a receiver therefor under the banking law of that State, is not exempt from seizure by attachment or other legal process at the suit of its creditors, and that the lien acquired by the levy of an attachment upon its property is not vacated by the subsequent appointment of a receiver for such bank. We hold that the bank property was subject to levy under an order of attachment at the time when the levy was made in this case.

Again, it is doubtful if the Bank of Tribune came within the terms of section 26 of chapter 43, Laws of 1891, which provides for the appointment of a receiver for an insolvent bank in an action by the Attorney General. Section 17 of said chapter evidently attempted to make it unlawful to conduct a banking business without having procured authority from the Bank Commissioner to do so, but the section is incomplete and makes it unlawful to conduct such a business unless reports are made to the Commissioner. It also provides that the Commissioner shall make examinations of banks and, if they are found in proper condition, he shall issue a certificate of authority to do a banking business. It is not a strained construction of the provisions of said chapter 43 to hold that it contemplates that banks which are brought within the provisions thereof by the examination and the certificate of authority are such as can be taken charge of by the Commissioner and for which a receiver can be appointed under this law. It is anomalous to speak of a receiver being appointed, at the suit of the State, for the property of an individual; but if such an individual is a banker, of course a receiver may be appointed under a law providing therefor. But if he was not authorized to conduct a bank, would it be within the purview of the law to

say that a receiver could be appointed for his property simply because he purported to conduct a bank, and without any authority therefor? As the Banking Law of 1897 covers the question here raised, by making it unlawful to conduct a banking business without a certificate of authority from the Bank Commissioner, the question we have for consideration becomes comparatively unimportant. In our opinion, it is extremely doubtful if any jurisdiction over the assets of the "Bank of Tribune"—Wightman—was acquired by the court in the action brought by the Attorney General.

II. The record shows that the sheriff complied with the provisions of the statutes in making the levy, except as to the contents of the safe. He was in actual possession of the office furniture and of the safe on September 28, when the appraisement was completed. The Attorney General claims that this levy is invalid for the reason that manual possession by the officer is essential to a valid levy, and that no such possession had been taken of the contents of the safe. The courts have generally held that the test of a valid attachment levy is this : Were the acts of the officer in making the levy such as would subject him to an action for trespass but for the protection of the process? The officer in attaching personal property must reduce it to actual possession so far as, under the circumstances, can be done. What is such an actual possession, must depend upon the nature and situation of the property. It has been repeatedly held by the courts that personal property may be attached without the officer touching it ; but he must obtain actual control of the property levied upon.

In *Lyeth v. Griffis* ( 44 Kan. 161 ), the court says, "The rule, that the first duty of an officer holding a

writ of attachment is to obtain and retain the possession of the property, rests upon reason as well as upon authority,'' and quotes the following from a decision of the Supreme Court of Iowa : ''To constitute a valid levy of a writ of attachment, the officer having the writ must do that which amounts to a change of the possession of the property, or something which is equivalent to a·claim of dominion, coupled with the power to exercise it.'' In the case cited the court was construing section 32 of the Justices' Code, which provides that ''when property can be come at,'' the same shall be taken into custody by the officer and held subject to the order of the justice of the peace. It will be observed that section 197 of the Code, which provides how an order of attachment shall be executed, does not contain the provision referred to above. Taking its language literally, a levy under an order of attachment would be valid if the sheriff should go to the place where the goods of the defendant are, and there declare that by virtue of said order he attaches such goods ; but of course it would be necessary for him to remain in possession of the attached property and to cause ·the same to be appraised. Section 199 provides that the officer shall deliver possession of the property attached, to the person in whose possession it was found, upon the execution by such person of a proper forthcoming bond. The inference is plain, that custody or control of the seized goods by the officer, to the exclusion of others, following the statutory declaration made in the place where the goods are found, is the true test of the validity of an attachment levy. If the property was subject to attachment, it was certainly levied on and has remained in the possession of the sheriff. Neither the Bank Commissioner nor the receiver has ever obtained control thereof. The appraisement of the attached goods was

proper, except as to the contents of the safe. The sheriff might have taken manual possession of the contents by the use of great force in breaking open the safe, or he might have had it opened by an expert. This could have been done by virtue of the authority the sheriff possessed under the order of attachment and under the levy. See *United States v. Graff*, 67 Barb. 304. He would very likely have had the safe opened in some way but for the fact that the Bank Commissioner was claiming certain rights as to the property and the fact that the suit by the Attorney General was to be brought, and was brought, so soon after the appraisement was returned. The sheriff performed his duty as he understood it.

While we think it was not proper to have made the return show an appraisement of the contents of the unopened safe, yet it amounts to an assertion on his part of exclusive custody of the attached property, including the contents of the safe. Holding, as we do, the view that the levy substantially complied with the law and that it gave the sheriff custody and control over the property seized, it follows that the order discharging the attachment was erroneous, and that the receiver appointed by the trial judge in the action brought by the Attorney General has no authority over the attached property. The action of the sheriff in making an incomplete appraisement can be corrected by the issuing of an *alias* order of attachment, it being evident that plaintiff in error ought not to lose his rights by reason of the incompleteness of the appraisement.

The order of the trial judge will be reversed, and the case remanded with instruction to the trial court, or the judge thereof, to order the sheriff to open the safe and complete the appraisement, upon an *alias* order of attachment; and for further proper proceedings.