## GIBBS ET AL. v. WALL ET AL.

1. If the appellant writes, at the close of each instruction to which he excepts, the words " excepted to," there is a substantial compliance with code of Colorado, page 56, section 69, providing that " a party excepting to the giving of the instructions  *  *  * shall not be required to file a formal bill of exceptions, but it shall be sufficient to write at the close of each instruction to which exception is taken the words ' excepted to,' *which shall be signed by the judge.*" The omission of the judge to sign an instruction so excepted to cannot prejudice the rights of the appellant.
2. Nor is the omission of the appellee to number the instructions prayed by him, and excepted to by the appellant, a fatal defect.
3. An assignment of error upon an instruction which sets out the instruction excepted to *in hæc verba* is sufficient.
4. Where the only issue made by the pleadings is as to the fact of a warranty as to the disposition of certain horses sold by the defend-

ant to the plaintiff, and there is no plea or proof of accord and satisfaction or payment, there is no foundation for an instruction as to the verdict which the jury should render, if they should find that there had been a settlement between the parties, and it is error to give such an instruction.

5. Where an express warranty is alleged and proved, and there is no contention at the trial as to an implied warranty, an instruction as to the effect of an implied warranty, if proven, is inapplicable to the issue, and is calculated to mislead the jury.

6. An objection that the evidence did not support the verdict will not be inquired into on appeal, where the bill of exceptions shows affirmatively that the evidence elicited in the case is not contained therein.

*Appeal from District Court, Saguache County.*

THE facts are stated in the opinion.

Messrs. ARTHUR and VOSBURG, for appellants.

MACON, C. By the uncontradicted testimony in this case, it appears that on the 17th day of May, A. D. 1881, appellees sold appellants five horses for use in a livery-stable, carried on by appellants at that time in the town of Saguache, in this state, and warranted them all to work well, either single or double, except one, as to which they declined to warrant him to work alone, but did warrant that he would work double. On trial of the horses, they were all found to be balky, and, while they would work well at times, they were liable to stop and refuse to go at any time. Two of these horses were driven by appellees for appellants before the purchase, and showed no bad traits, and seemed to be satisfactory to appellants; but the other three were not tried before the purchase, and were bought on the warranty aforesaid. One Buchanan acted as salesman in the transaction for appellees, and was called and examined as their witness on the trial, and admitted that one of the horses had to be led before he was driven out of Denver by appellants on their way to Sagauche. The horses were sold and bought in the city of Denver.

It was also shown by uncontradicted testimony that of the two horses known as the "chestnut team" one or both balked on the way to Littleton on the same day that appellants left Denver to go to Saguache. On the arrival of appellant Fish at Monument, he stopped and corralled the horses, and returned to Denver, called upon Buchanan, complained of the horses, and informed him of their balky disposition, and of the trouble he had had in driving them. Buchanan returned with Fish to Monument to examine the horses, and assist him to drive them from Monument to Colorado Springs, a distance of about twenty-five miles. Some of these horses balked with Buchanan at Colorado Springs, and Fish expressed to Buchanan a desire to return the horses to appellees, but was dissuaded therefrom by Buchanan's assurance that the horses would drive well by the time they reached Saguache, and if they continued balky after their arrival at Saguache, that appellees would make it "all right," and at the same time gave Fish $20 or $30, as Buchanan says, to pay the expenses of delays occasioned Fish by the bad disposition of the horses, and also paid the stable bill at Colorado Springs. This sum of $20 or $30 and the stable bill were not given or received as a satisfaction for the breach of the warranty. Buchanan returned to Denver and Fish to Saguache with the horses, and put them in the livery-stable of appellants. Their dispositions did not improve, and they continued from time to time to balk, though they were used in and about the livery-stable, and let to customers. Some time after Fish's arrival at Saguache he returned to Denver, called on Buchanan, and stated to him that the horses continued unsatisfactory, and were not as they had been warranted to be; and called also upon appellee Wall, had some conversation with him on the subject, and was told by Wall to wait until appellee Witter returned to Denver, and they would endeavor to arrange the matter; whereupon Fish returned to Saguache, and no further negotiations took place between them on the subject.

Some time in the month of July, 1881, appellants brought suit against appellees upon the warranty, in the county court of Saguache county, setting up the terms of the warranty to be that said horses were kind, thoroughly and well broke, and would drive single and double, and that they were in all respects suitable and proper horses for plaintiffs' use in their livery-stable; averring breach of the warranty, and laying their damages at $500. Defendants below answered, admitting that plaintiffs were partners, and that defendants were also partners; admitting also the sale of the horses; but deny that any of the horses were warranted as to any quality, or that they made any representations as to the horses; and aver that plaintiffs acted upon their own judgment in selecting the horses. after having carefully tried the same; further aver that plaintiffs took possession of the horses, and converted them to their use, and had never returned, or offered to return, the same, and still had possession thereof; averring the value of the horses to be $750.

In the month of September of that year the case came on for trial in said court, and judgment was rendered against the plaintiffs below for costs, from which judgment the plaintiffs appealed to the district court of said Saguache county; and on the 24th day of December, 1881, the cause was tried in the district court, and a verdict found for defendants. Plaintiffs filed a motion for a new trial, which was overruled by the court, and judgment rendered on the verdict, to which plaintiffs excepted, and appeal to this court, and assign ten errors occurring in the trial.

Before examining the assignments of error upon the instructions refused for plaintiffs, and given for defendants, it is necessary to consider the objection of defendants, made in argument, that no proper exceptions were taken and saved to the instructions now objected to, because the same were objected to *en masse.* If this point is well taken, it would seem to bring this case within the

rule pointed out and enforced in *Webber v. Emmerson,* 3 Colo. 251. It is true that in the bill of exceptions, following immediately after the instructions, this sentence occurs: "Whereupon the plaintiffs, by their counsel, excepted to the court giving the above and foregoing instructions on behalf of defendants." If this were all the bill of exceptions contained as to exceptions taken by the plaintiffs in error to the instructions in behalf of defendants, it might be necessary to hold that such exception was not sufficient; but it clearly appears in the bill of exceptions that each of the first four instructions given in behalf of defendants was specifically excepted to by plaintiffs. In the margin of each of these four instructions are found the words, "Excepted to by plaintiffs." Does this show an exception to each of these instructions? We think it does. It is true that section 69, page 56, Code, in force at the time of this trial, provides that " a party excepting to the giving of the instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions, but it shall be sufficient to write at the close of each instruction to which exception is taken the words 'Excepted to,' which shall be signed by the judge." This provision was intended to guide and direct the judge, not that of the party litigant, except so far as such party was required to write upon the instructions his exception. The signature of such judge the party might well leave to the judge, upon the assumption that he would do that which by law he was required to do, and we cannot hold that the omission of the judge to comply with this direction of the statute ought to or can prejudice the rights of the party. If the party wrote at the close of each instruction to which he excepted the words "Excepted to," he did all he was required to or can do, and may well trust the judge to do his duty in the premises. The judge has in this instance signed the bill of exceptions, which shows unequivocally that, at the close of each of the aforesaid four instructions for

defendants, the plaintiffs in error excepted thereto; and the insertion in the same bill of exceptions of the general words above quoted does not change the effect of the specific statements found therein. The maxim, *utile per inutile non vitiatur*, has a perfect application in this particular. The specific exception to each of the first four instructions given for defendants is well shown in the record, and the omission of the judge to sign such exceptions cannot preclude an examination of the errors assigned thereon by this court.

As to instructions 2 and 3, prayed by the plaintiffs and refused by the court, and as to the giving of the same as modified by the court, there seems to have been no specific exception, and for that reason the assignments of error thereon will not be considered.

It is further contended by defendants in error that the assignments of error did not sufficiently point out the action of the court, or the language of the instructions excepted to. The fifth and sixth assignments upon the first and second instructions given for defendants in error set out *in hæc verba* the instructions excepted to, and it is impossible to conceive how they could be more specific. The rule does not require that the assignments of error should be an argument, and to require more particularity than has been required in this case would be to require an argument establishing the error complained of.

It only remains to inquire whether, in giving such instructions as plaintiffs in error properly excepted to at the trial below, and upon which they have assigned error in this court, there is any material error prejudicial to plaintiffs. The fifth assignment goes to the first instruction asked by and given for the defendant below. In the instruction there is error for two plain reasons: (1) There was no plea of accord and satisfaction or payment of any damages arising upon the breach of warranty; and (2) because there was no evidence which justified such instruction. The following is the instruction: " The court

instructs the jury that if you believe from the evidence that, before the plaintiffs arrived in Sagauche with said horses, on the way home, they discovered said defects in their traits and qualities, that they notified defendants about it, and defendants, or any one of them, came to plaintiffs and settled for such defects so supposed to exist, by paying plaintiffs $100, or any other sum, then the jury are instructed that was an accord and satisfaction of any claim plaintiffs had on account of any defects in said horses, and you will find for defendants."

It has already been said that the only issue made by the pleadings was as to the fact of a warranty of the disposition of the horses, and in the trial the giving of the warranty was confessed by Buchanan. There must be some correspondence and relation between the claim or defense and the evidence; and though a party may, through ignorance or inadvertence, sit by and allow his adversary to prove a case that he has not pleaded, no judgment should be given upon a case so made without at least an amendment of the pleadings. *Thomas v. Mackey*, 3 Colo. 390; *Burdsall v. Waggoner*, 4 Colo. 256, 261. Had there been a plea of payment or accord and satisfaction, or of partial payment, and any evidence to support such defense, the instruction would have been proper; but in this instance there was no foundation for it, either in the pleadings or evidence. No witness testified to any settlement of the damages or payment thereof. Buchanan, who paid the $20 or $30 and stable bill, did not pretend to have understood that this money was paid or accepted for any such purpose, but for the expenses caused by the delay occasioned by the horses balking on the way to Colorado Springs. He says, after speaking of his going from Monument to Colorado Springs with appellant Fish: "Then I told Mr. Fish that as they had been delayed on the road, that I wanted to pay them something for their trouble, and paid them some $20 or $30 for their trouble, and paid their stable bill. * * *

He took the money from me, and did not say whether it settled the matter or not, and told me that he was satisfied that there would be trouble." He was then asked by appellants' counsel, "Did not you tell Fish to take the horses along, and, if they were not all right, that we would make it 'all right?'" to which he answered, "I did." It is too clear for dispute that neither Buchanan nor Fish intended this payment to be settlement or satisfaction to appellants for breach of the warranty. Such payment might be applied in reduction of the damages arising upon the breach of the warranty had there been any plea to justify such application of the payment; but in this case there was not. The court overlooked the pleadings, and mistook the effect of the evidence, and in that way fell into the error pointed out.

The sixth assignment is directed against the second instruction for the defendants below, which is in the following language: "The court directs the jury that if you believe from the evidence that the plaintiffs, or either of them, were present when the horses were sold, and examined them, and hitched them up and drove them, then you are instructed that there is no implied warranty, as to their traits or qualities, which have been discovered, and the plaintiffs must show, by preponderance of evidence, that there was an express warranty of said horses by defendants; and, if they fail to do so, you will find for the defendants." Plaintiffs below did not proceed upon an implied warranty, and in the trial there was no contention upon it, but in their complaint alleged and on the trial proved an express warranty. The instruction therefore was inapplicable to any issue in the case, and was calculated to lead the minds of the jurors from the true issue.

The seventh and eighth assignments of error are based upon the failure on the part of defendants to number the instructions prayed by them, and of the judge to sign the exceptions of appellants' counsel thereto. These omis-

sions are not fatal, and the judgment is not vitiated by any such omission.

The tenth and last assignment of error is that the court erred in overruling plaintiffs' motion for a new trial, because the evidence did not support the verdict, and because defendants admit by their answer all material allegations of the complaint, and upon the further reason that the law, as given by the court, is not the law in the case. As to the last clause in this assignment, it has already been discussed and disposed of, and it is unnecessary to go over the same grounds again. That the evidence did not support the verdict we cannot inquire into, for the reason that the bill of exceptions shows affirmatively that all the evidence elicited in the case is not contained therein; and, as to the defendants admitting the material allegations of the complaint, we have only to say that there are no admissions in the answer by which appellants can have any advantage, because the only cause of action stated in the complaint is explicitly and positively denied in the answer, viz., the giving of a warranty of the horses; but, for the errors in the instructions above pointed out, the judgment should be reversed and the cause remanded for further proceedings according to law.

STALLCUP and RISING, CC., concur.

PER CURIAM.    For the reasons assigned in the foregoing opinion the judgment is reversed and the cause remanded.

*Reversed.*