CHANDLER v. RUTHERFORD et al.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1900.)

No. 1,313.

1. UNITED STATES MARSHALS—BOND—LIABILITY OF SURETIES.

When an officer assumes to act under color of his office, having no writ or process whatsoever, or having process which on its face is utterly void, it is the prevailing doctrine that whatever he may do under such circumstances imposes no liability on his sureties. To constitute color of office such as will render an officer's sureties liable for his wrongful acts, something else must be shown besides the fact that in doing the act complained of the officer claimed to be acting in an official capacity.

2. SAME—DEPUTY MARSHAL—LIABILITY OF SURETIES.

A United States deputy marshal having been informed that a felony had been committed, but without being advised that the plaintiff was the person who had committed the offense, and without the exercise of any

diligence to ascertain that fact, shot the plaintiff, who was an innocent party, for the purpose of arresting him. No warrant had been issued for the supposed offense. *Held*: (1) That, though Mansf. Dig. § 2002, authorized arrest for felony without warrant "where the officer had reasonable grounds for believing that the person arrested had committed the felony," the officer's act was not done colore officii, and that the marshal's sureties were not liable therefor in an action on the marshal's bond, which was conditioned for the faithful performance of official duty by him and his deputies; (2) that, when an officer seeks to justify an arrest without a warrant under a statute like the one quoted above, and the act for which the arrest was made was not committed in the officer's presence, he must show, in order to justify his conduct, that he acted on information such as would justify a reasonable man in believing that the particular person arrested was guilty of a felony.

In Error to the United States Court of Appeals in the Indian Territory.

This case was tried and determined below on demurrer to the complaint, which was adjudged insufficient to sustain a judgment. The first paragraph of the complaint, which was filed by James Chandler, the plaintiff in error, alleged, in substance, that Samuel M. Rutherford, one of the defendants in error, and one of the defendants below, was the duly appointed and acting United States marshal in and for the Northern district of the Indian Territory, and that the other defendants in error, to wit, George Sparks, John F. Williams, Clarence W. Turner, Andrew W. Robb, Pleasant N. Blackstone, and James D. Lankford, were sureties upon the official bond of said Samuel M. Rutherford as such United States marshal in and for the Northern district of the Indian Territory, a copy of which bond was attached to the complaint. The remaining material allegations of the complaint were as follows:

"The plaintiff says: That on or about the 8th day of August, 1895, said defendant Samuel M. Rutherford, United States marshal as aforesaid, had in his office in the town of Muskogee, in said Northern district of the Indian Territory, A. A. McDonald, his duly appointed and acting chief deputy marshal, who was, in the absence of said United States marshal from his office, fully authorized to act for and in the room and stead of said United States Marshal Rutherford, and to do and perform all the duties pertaining to the office of United States marshal. That on the day and date last aforesaid, in the absence of said defendant Samuel M. Rutherford, United States marshal as aforesaid, from his office in said town of Muskogee, complaint was made to his said chief deputy marshal, A. A. McDonald, at his office in said town of Muskogee, by Dave Purty, of said Northern district of the Indian Territory, of his having had some horses stolen from him by a man by the name of Flave Carver, and that said horse thief was then in the vicinity of said town of Muskogee; and thereupon said Chief Deputy Marshal A. A. McDonald went to the office of the United States commissioner in said town of Muskogee, to obtain a writ for the arrest of said horse thief, Flave Carver, but the commissioner was absent from his office, and no writ was obtained; and thereupon, on the same day, said Chief Deputy Marshal A. A. McDonald, at the suggestion and request of James M. Givens, the assistant United States attorney in and for said Northern district of the Indian Territory, sought for Dave Adams, a duly appointed and acting deputy marshal in and for said Northern district, Indian Territory, and found him at his house in said town of Muskogee, and then and there made known to him that there was reasonable ground to believe that Flave Carver had committed the crime of 'horse larceny' (a high felony), and it was believed the horse thief, Flave Carver, was then in the vicinity of the town of Muskogee, and he, the said chief deputy marshal aforesaid, wanted said Deputy Marshal Adams to go with said Dave Purty and

arrest said horse thief, Flave Carver; and said Chief Deputy Marshal A. A. McDonald then and there requested the said Deputy Marshal Adams to meet him and Purty on that evening at a storeroom next door to the post office in said town of Muskogee. After leaving the Deputy Marshal Adams' residence, and before the meeting at the store, said Chief Deputy Marshal A. A. McDonald furnished said Purty with a double-barrel shotgun, and also loaded shells, loaded with BB shot, or small-size buckshot; and then, on their meeting said Deputy Marshal Adams, about 8 o'clock on the evening of the same day, at said store next door to the post office, he said Deputy Marshal Adams, refused to go or to undertake to arrest the horse thief, Flave Carver, with no one but said Purty to go with him; and thereupon said Chief Deputy Marshal A. A. McDonald got Joseph N. Walker to get his gun, and go with said Deputy Marshal Adams and said Purty to arrest said horse thief, Flave Carver; and immediately thereafter, to wit, about 8 o'clock, on the evening of August 8. 1895, said Deputy Marshal Adams, with the said Walker and Purty, started from said store, which was on Main street in said town of Muskogee, to try to find and arrest said horse thief, Flave Carver. They went from said store up to the Missouri, Kansas & Texas Stockyards, in said town of Muskogee, and there the said Deputy Marshal Adams got two other posse men, namely, Joseph Hayes and Richard Brim, to go with him, and assist in finding and arresting said horse thief, Flave Carver. From said stock yards said Deputy Marshal Adams and his then posse of four men started, and went on the west side of a switch of the Missouri, Kansas & Texas Railway Company, and when they had reached the north part of the said town of Muskogee they crossed from the west side to the east side of said switch, and just at that time, to wit, between 8 and 9 o'clock in the evening of the 8th day of August, 1895, the plaintiff was walking with a lady in the north end of Cherokee street. in said town of Muskogee, and while so walking the said Deputy Marshal Dave Adams and his posse of four men, all of whom were seeking the horse thief, Flave Carver, came up stealthily within some twenty or thirty steps of the plaintiff and the lady with whom he was walking, and, without making any proclamation of their character and their purpose, and without the exercise of reasonable diligence, or any diligence whatever, to ascertain whether or not the plaintiff was the horse thief, Flave Carver, they were seeking to arrest, some one of them simply called out 'Hey, there!' and the plaintiff and the lady stopped for a moment, and in answer to an inquiry made by the lady the plaintiff expressed it as his opinion that they were boys in the grass; and when the plaintiff and the lady had walked but a few steps further on the same call, 'Hey, there!' was made by some one of said deputy marshal's posse, and the plaintiff then stopped, and, as he was turning around, said deputy marshal, or his posse men, or some one of them, fired upon, shot, and severely wounded the plaintiff with leaden bullets or shot in the left side of his head and face, also in his left shoulder, left arm and in his back, they supposing him to be the horse thief, Flave Carver. * * * By reason of all which the plaintiff says he has been permanently injured to his damage twenty-five thousand dollars. Wherefore he prays judgment for twenty-five thousand two hundred and fifty-seven and $^{50}/_{100}$ dollars and all other proper relief."

A demurrer to the foregoing complaint was sustained at nisi prius, and the complaint was thereupon dismissed. This judgment was affirmed in the United States court of appeals in the Indian Territory, whereupon the plaintiff in error brought the case to this court by a writ of error.

Napoleon B. Maxey (J. P. Clayton, Benjamin Martin, Jr., and Shackelford & Shackelford, on the brief), for plaintiff in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is now well settled, although the proposition was at one time disputed, that the sureties on the official bond of a marshal, sheriff, con-

stable, or other ministerial officer may be held liable when the officer having process in his hands commanding him to seize the property of one person in fact seizes the property of another. In such cases the trespass is not the act of a mere individual, but is perpetrated colore officii, and for that reason the act imposes a liability on the officer's sureties to the same extent as when, having a writ in his hands, he fails to execute it, or makes an excessive levy, or is guilty of some other wrongful or oppressive act in the execution of the process. Lammon v. Feusier, 111 U. S. 17, 21, 4 Sup. Ct. 286, 28 L. Ed. 337, and cases there cited; People v. Schuyler, 4 N. Y. 173; Holliman v. Carroll's Adm'rs, 27 Tex. 23; Carmack v. Com., 5 Bin. 184; Forsythe v. Ellis, 4 J. J. Marsh. 299. But when an officer assumes to act under color of his office, having no writ or process whatsoever, or having process which on its face is utterly void, it seems to be the prevailing doctrine that whatever he may do under such circumstances imposes no liability on his sureties. To constitute color of office such as will render an officer's sureties liable for his wrongful acts, something else must be shown besides the fact that in doing the act complained of the officer claimed to be acting in an official capacity. If he is armed with no writ, or if the writ under which he acts is utterly void, and if there is at the time no statute which authorizes the act to be done without process, then there is no such color of office as will enable him to impose a liability upon the sureties in his official bond. Thus, where a constable, by representing that he had an execution in his hands against the plaintiff, when he had no such execution, succeeded in collecting from the plaintiff a certain sum of money, it was held that the constable's sureties were not liable. Com. v. Cole, 7 B. Mon. 250. And where a sheriff claiming to have an execution in his hands, but having no such process, sold lands, and received the proceeds, his sureties were held to be exempt from liability. Eaton v. Kelly, 72 N. C. 110. And where a warrant was issued to arrest certain unknown persons, their names not being specified in the writ, and an arrest was made thereunder, it was held that the warrant was void, and that the act of the officer imposed no liability upon his sureties. Allison v. People, 6 Colo. App. 80, 39 Pac. 903. And where an officer goes outside of the line of his official duty, and acts without the scope of his authority, such an act, though done colore officii, is not a breach of his bond for the faithful performance of his duty. State v. McDonough, 9 Mo. App. 63. See, also, Hawkins v. Thomas, 3 Ind. App. 399, 29 N. E. 157, and cases there cited, where it was held that when an officer, though he assumes to act as such, commits a wrong under circumstances where the law does not impose on him a duty to act at all, the wrong is not a violation of any official duty, and is not embraced within the sponsorship of the surety. In the case at bar the complaint shows that at the time of the attempted arrest of Flave Carver the marshal's deputy had no warrant for the arrest of any one, and no warrant had in fact been issued on account of the supposed offense, but a statute of the state of Arkansas (Mansf. Dig. § 2002) was in force in the Indian Territory, which is as follows:

"A peace officer may make an arrest: First, in obedience to a warrant of arrest delivered to him. Second, without a warrant where a public offense is

committed in his presence or where he has reasonable grounds for believing that the person arrested has committed a felony."

The contention is that, as this statute authorizes an arrest without warrant in two instances, the deputy marshal must be regarded as having acted colore officii in such a sense as will render the marshal and his sureties liable for the wrong committed. It will be observed, however, that no offense had been committed in the deputy marshal's presence when he attempted to arrest the plaintiff, and that such knowledge as he had of an offense having been committed was derived wholly from hearsay. It is further noticeable that the complaint fails to show that prior to the arrest the deputy marshal had been informed that the plaintiff was Flave Carver, or that any effort was made by the officer or any member of his posse to ascertain whether he was in fact Flave Carver, who had been accused of horse stealing, while it is expressly averred in the complaint that the arrest was attempted "without the exercise of reasonable diligence, or any diligence whatever, to ascertain whether or not the plaintiff" was the person whom they were looking for and seeking to arrest. It is clear, therefore, under the averments of the complaint, that, if the arrest had been consummated, without the use of firearms, or any unusual force or violence, the deputy marshal would have been guilty of a trespass, and could not have justified his conduct under the statute aforesaid, because, having no knowledge or information whatever as to who the person was whom he attempted to arrest, he cannot be said to have had any ground for believing that the plaintiff had committed a felony. When an officer seeks to justify an arrest without a warrant under a statute like the one now under consideration and the act for which the arrest was made was not committed in his presence, it is manifest that he must show that he acted on information such as would justify a reasonable man in believing that the particular person arrested was guilty of a felony. Where he has no such information, but nevertheless makes an arrest, he acts entirely outside of the line of his duty and authority; as much so, we think, as an officer who arrests without a warrant where there is no law permitting an arrest without process. We are of opinion, therefore, that the facts stated in the complaint will not warrant a judgment against the marshal and his sureties in an action on the marshal's bond. The liability on the bond, by the terms whereof the sureties agreed that the marshal and his deputies should faithfully perform the duties of his office, is purely contractual. Such an obligation is materially different from an undertaking by the sureties to be responsible for any wrongful act of the marshal and his deputies which they may commit under the pretense that they are discharging an official duty. When the marshal's deputy undertook to arrest the plaintiff, he had no information, so far as the case discloses, which either required or authorized him as an officer to lay hands on the plaintiff, much less to make use of a deadly weapon for the purpose of arresting him. The deputy's act on the occasion in question was not only unauthorized, but it did not have the appearance of being done in obedience to the mandate of the law; in other words, he did not act colore officii in any such sense or under such circumstances as will render the sureties responsible. And while

it may seem a hardship that the plaintiff should be remitted to his action against the individuals who were guilty of the outrage, yet it must be borne in mind that it would be equally unjust to impose on the sureties a liability for a wrong in which they were in no wise concerned, and which is not within the terms of the bond.   The judgment of the United States court of appeals in the Indian Territory and the judgment of the United States court in the Indian Territory, Northern district, are therefore affirmed. .