## WILLIAMS *et al.* v. ARENDS.

No. 6713. Opinion Filed March 14, 1916.

Rehearing Denied May 9, 1916.

(157 Pac. 313.)

1. **SHERIFFS AND CONSTABLES—Liability—Misapplication of Funds.** A constable and his sureties are liable for the misapplication of funds derived from a check seized under an order of attachment, where ·the constable in levying such attachment serves a copy thereof and takes possession of the property, though the constable fails to properly complete the levy and return as required by statute.

2. **APPEAL AND ERROR—Presenting Question in Trial Court—Requests for Instructions.** Error assigned upon instructions offered and refused upon the trial will be considered by this court, although the statutory indorsements upon such instructions were not signed by the trial judge, where it clearly appears from the record that such instructions were offered at the proper time, were refused, and exceptions to the refusal thereof duly taken.

3. **TRIAL—Instructions—Applicability to Case.** Instructions are properly refused which, though correct as abstract statements of law, are not applicable to the facts of the case as pleaded.

(Syllabus by Burford, C.)

*Error from District Court, Garfield County;
James B. Cullison, Judge.*

Action by John Arends against John A. Williams and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*H. G. McKeever* and *Frederick L. Brimi,* for plaintiffs in error.

*Parker & Simons,* for defendant in error.

Opinion by BURFORD, C. This was an action brought by John Arends to recover the proceeds of a certain check delivered to Williams, as constable. It was tried upon two theories: First, that of the plaintiff, which was, in substance, that the defendant Williams, a regularly elected and acting constable, came to the farm of the defendant Arends armed with a writ of attachment issued out of a justice of the peace court in Enid in an action in which one McCarty was plaintiff and John Arends was defendant; that Williams served Arends with a copy of the summons in the suit and a copy of the writ of attachment, and stated to Arends that he would have to levy the attachment upon some of the live stock on the farm; Arends thereupon told Williams that he was about to have a public sale of said stock, which would be ruined by the levy of the attachment, and said that he would give a check to be taken by Williams under the order of attachment and held until the following day, when Arends would go to Enid and make a redelivery bond in the case; that, after ascertaining from the bank that such check was good, the defendant Williams accepted the same and left, but that, in violation of the agreement and his duty as an officer, he cashed said check and paid the proceeds thereof into the justice of the peace court in

satisfaction of the claim of McCarty, which, together with the costs of the case, was paid, and the cause dismissed; that Arends came to Enid within the 24 hours after the levy, and went to the justice's office ready, willing, and able to make a proper bond and found the cause dismissed; that he had a valid defense to the action of McCarty against him, of which he was deprived and caused to lose the amount of the check. The defendants' theory, as set forth in their pleading and evidence, was that the defendant Williams made a levy of the writ of attachment, and that thereupon the plaintiff, Arends, gave a check in payment of the debt, and that Williams properly turned the proceeds over to the justice for such purpose. The petition of the plaintiff was challenged by the separate demurrers of the defendants on the ground that it did not state facts sufficient to constitute a cause of action against the various defendants. The language of the petition is probably insufficient to support the allegations of an actual levy upon the check by Williams, and the demurrer of the defendants Porter and Luft in the first instance should have been sustained.

The law of the case is clear. The Supreme Court of Oklahoma, in *Dysart v. Lurty*, 3 Okla. 601, 41 Pac. 724, said:

"Where an officer, while doing an act within the limits of his official authority, exercises such authority improperly, or exceeds his official powers, or abuses an official discretion vested in him, he becomes liable on his official bond to the person injured. But, where he acts without any process and without the authority of his office, in doing such act he is not to be considered an officer, but a personal trespasser."

The court then lays down the doctrine that the surety upon the official bond of an officer will be liable only for acts done *virtute officii*, and not for acts done *colore officii.* This doctrine, in spite of vigorous assaults upon it, has been followed by this court in *Lowe et al. v. City of Guthrie,* 4 Okla. 287, 44 Pac. 198; *Inman v. Sherrill,* 29 Okla. 100, 116 Pac. 426; *Jordan v. Neer,* 34 Okla. 400, 125 Pac. 1117; *Taylor v. Morgan,* 43 Okla. 142, 141 Pac. 679; *Hughes v. Commissioners,* 50 Okla. 410, 150 Pac. 1029; *Commissioners v. Vaughan,* 51 Okla. 609, 152 Pac. 115; and by the federal courts of this circuit in *Chandler v. Rutherford,* 101 Fed. 774, 43 C. C. A. 218.

If, therefore, the defendant Williams, under and by virtue of his process in atttachment, and after delivering a copy of such process to the defendant, took possession of the check in question and retained the same, there can be little doubt that he was acting by virtue of his official authority, and that his bondsmen would be liable for the conversion or improper application of the property so taken. The fact that the levy might have been inartificially made, that no householders were called, that no declaration of the levy was made, and that no inventory or anything that can properly be called a return was made, does not alter the liability of the bondsmen. These were matters which might have caused the levy to be quashed upon a motion to discharge said attachment (*Dodson v. Wightman,* 6 Kan. App. 835, 49 Pac. 790; *Harding v. Guaranty Loan & Trust Co.,* 3 Kan. App. 519, 43 Pac. 835, and cases cited); but the fact that the defendant was armed with process and that he actually took possession of the property and retained it, which is the principal thing (Waples on Attachments, sec. 210; 4 Cyc. 583, and cases cited), shows clearly that the defendant

Williams was acting under and by virtue of his process, even though he may have exercised the authority thereby conferred improperly.

The trial court properly instructed the jury upon this theory, and the instruction given by the court is more clear than the pleading of the plaintiff. As we said above, the petition alleges the levy upon this check, if at all, in very doubtful language, and was subject to demurrer. The defendants, however, in their answer alleged that a levy was made, and, inasmuch as it appeared that this check was the only thing that was taken into possession, it was the only thing upon which a levy could have been made. The defendants then alleged in their answer that the check was given in payment of the debt, and this theory was also submitted to the jury by the trial court in an instruction to which neither party excepted. Under the circumstances we are not inclined to hold that the overruling of the demurrer was prejudicial error. It is true that this court has held that ordinarily answering over after a demurrer has been overruled and exceptions saved will not waive the error upon the ruling upon the demurrer (*Love v. Cavett,* 26 Okla. 179, 109 Pac. 553; *Clinton Cemetery Ass'n v. McAttee,* 27 Okla. 160, 111 Pac. 392, 31 L. R. A. [N. S.] 945) ; but this rule is limited in *American Fire Ins. Co. v. Rodenhouse,* 36 Okla. 211, 128 Pac. 502, and *Rochester German Ins. Co. v. Rodenhouse,* 36 Okla. 378, 128 Pac. 508, by holding, in effect, that where the pleading of the demurrant supplies the defect of the petition, and it does not appear that the demurrant was injured by the overruling of the demurrer, the case will not be reversed because such demurrer was overruled. In the case first cited this court said, quoting from *Gilmore v. Lycoming Fire Ins. Co.,* 55 Cal. 124:

"By the choice of the defendant the fact which was essential to the plaintiff's recovery which had been omitted to be pleaded in his complaint was so pleaded in the defendant's answer, with a view to defeat the plaintiff's recovery, that a jury was enabled, upon the evidence before it, to pass upon the issue raised and tendered by the defendant. If the defendant has been beaten upon its own chosen ground of battle, which but for its pleading could not have been there fought, we cannot see any good reason to reverse the judgment here, in order that the plaintiff may plead in his complaint, and tender as an issue to the defendant to be retried, that which, of its own choice, the defendant, in its answer, has already tendered to the plaintiff, upon which the controversy has been tried before a jury, and by it determined, as we must suppose, properly."

That language is peculiarly applicable to the case at bar. Whatever the defects of the petition, the trial court fairly offered the controversy to the jury upon the theory of the levy upon the check and the conversion by the defendant Williams, and upon the other theory that the check was given as payment, and that the conditions of the payment were properly carried out. These would be the exact issues which must be retried were we to reverse the case for the insufficiency of the petition and send it back for a new trial.

In *Mullen v. Thaxton*, 24 Okla. 643, 104 Pac. 359, the court said:

"Although a demurrer may have been improperly overruled, yet, if the demurrant was not harmed by such ruling the judgment will not be reversed on account of the harmless error."

And again:

"This was the theory of the defense, and the theory upon which the case was tried by both sides. But, even though the facts alleged in the answer may not have constituted a defense, yet, under the circumstances of this case, we cannot see how the plaintiff was harmed by the order overruling it."

We therefore hold that the overruling of the separate demurrers of the defendants by the trial court was harmless error.

The refusal to give a number of instructions tendered by the defendants is alleged as error. This allegation of error is met by the objection that the instructions were not signed by the trial judge, and cannot therefore be considered.

The record sets out in detail the instructions offered, upon each of which appears substantially the same notation, as follows:

"Offered by defendants and refused. Exceptions noted. 2—5—14, ————, Judge."

In the case-made appears this recital:

"The following instructions were offered and refused by the court, to which exceptions were saved."

Then follow the instructions in question and an indorsement as follows:

No. 1034. Arends v. Williams. Refused instructions filed Feb. 6/15. G. M. Scifers, Clerk."

Section 5003, Rev. Laws 1910, provides:

"A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to write at the close of each instruction, 'Refused and excepted to,' or

'Given and excepted to,' which shall be signed by the judge."

It is, of course, apparent that the object of the statute is to fix definitely what instructions were given or refused and what exceptions were taken. · There are a number of decisions, notably in Indiana, which hold that similar provisions are mandatory and. must be strictly followed, and that the omission of the signature of the judge, or even the date, is fatal to a review upon appeal. See, as illustrating this rule, *Baldwin v. Shill*, 3 Ind. App. 291, 29 N. E. 619; *Malott v. Hawkins*, 159 Ind. 127, 63 N. E. 308; *Roose v. Roose*, 145 Ind. 162, 44 N. E. 1.

This court, however, is not inclined to construe this statute so strictly. If it can be fairly and certainly ascertained from the case-made that the instructions upon which error is predicated were actually offered and refused, and exceptions saved at the time, then this court will not refuse to review them because the signature of the trial judge is omitted therefrom. This position is not without authority to sustain it. In *Bibbs v. Wall*, 10 Colo. 157, '14 Pac. 216, the Supreme Court of Colorado, passing upon the effect of a statute practically identical with ours, said: ·

"This provision was intended to guide and direct the judge, not that of the party litigant, except so far as such party was required to write upon the instructions his exception. The signature of such judge the party might well leave to the judge, upon the assumption that he would do that which by law he was required to do, and we cannot hold that the omission of the judge to comply with this direction of the statute ought to or can prejudice the rights of the party. If the party wrote at the close of each instruction to which he excepted the words 'Excepted to,' he did all he was required to do or can do, and may

well trust the judge to do his duty in the premises. The judge has in this instance signed the bill of exceptions, which shows unequivocally that at the close of each of the aforesaid four instructions for defendants the plaintiffs in error excepted thereto; and the insertion in the same bill of exceptions of the general words above quoted does not change the effect of the specific statements found therein. The maxim, *'Utile per inutile non vitiatur,'* has a perfect application in this particular. The specific exceptions to each of the first four instructions given for the defendants is well shown in the record, and the omission of the judge to sign such exceptions cannot preclude an examination of the errors assigned thereon by this court."

In *Cook v. Hunt,* 24 Ill. 550, the Supreme Court of Illinois, speaking of instructions, said:

"As to those which the court neglected to mark as given or refused, as the statute requires, we have to say, this statute is directory to the court, and should be obeyed, but if, in the hurry of business, it should not be, a party who is not in fault should not be prejudiced by it, if the record shows what was done with the instructions. If the law is correctly laid down in them, we do not think a court would be justified in reversing a judgment because they were not marked 'Given.'"

See, to the same effect, *Harrigan v. Turner,* 65 Ill. App. 470, and cases cited.

This brings us to the consideration of the instructions. Without reviewing them in detail, they may be grouped under two heads: First, those which, in effect, direct a verdict for the defendants or some one of them; second, those which declare the law to be that, if the check in question was accepted as a redelivery bond, or to procure a stay of the levy of the attachment, the sureties upon the bond of the constable would not be liable.

As to the first class of instructions, there being evidence reasonably tending to support the theory of the plaintiff that a levy was made upon the check in question, the verdict of the jury would support that theory, and will not be set aside, under the well-settled rule of this court.

With regard to the second class of instructions, it may be said that in some respects, as abstract statements of law, they are correct. There is nothing in the writ of attachment or in the statutes in relation to it which authorized the constable to accept a check, or the money represented thereby, for the purpose of delaying or staying the execution of his writ. Neither is there anything which would authorize the constable to accept a check or cash in the amount of plaintiff's claim and costs as a redelivery bond, and, if he did so, he would act, not under his process or *virtute officii*, but outside of his process and his duties as an officer, and the sureties upon his official bond could not be held liable for the money so received or taken by him. The case of *Mayor and Aldermen of Jersey City v. Schoppe*, 82 N. J. Law, 697, 82 Atl. 913, 39 L. R. A. (N. S.) 577, and cases cited in the note appended thereto, and *Feller v. Gates*, 40 Or. 543, 67 Pac. 416, 56 L. R. A. 630, 91 Am. St. Rep. 492, are illustrative of this contention. The defendants, however, who offered those instructions, pleaded that a levy had been made, and that the check was taken in payment, and allowed the court, without objection or exception, to instruct the jury:

"If the defendant Williams, acting as constable, accepted of the plaintiff, John Arends, a check for $135 in full settlement of the claim of one J. E. McCarty against John Arends, plaintiff herein, in a suit pending before E. F. Smith, justice of the peace, and that the same was paid,

cashed, and turned over to the justice of the peace wherein said action was pending, then in that event the court instructs you that the defendant Williams was acting within the scope of his authority as such officer, and that neither the defendant Williams nor his bondsmen would be liable to the plaintiff for any damages sustained by him, and it will be your duty to find for the defendants."

This instruction followed the theory of the defendants' answer, and, although we expressly do not decide that it states the law in relation to the official duty of the defendant Williams in accepting the check, as a payment of the claim of McCarty, still the plaintiffs in error, having allowed it to be given without objection or exception, are bound by it. Further, as their pleading did not raise the question as to whether or not the check was received as a redelivery bond or to stay the execution of the writ, instructions upon that theory were properly refused by the court. It is not error for the court to refuse instructions which may be true statements of abstract propositions of law, where such propositions are not applicable to the facts as pleaded. *Finch et al. v. Brown et al.,* 27 Okla. 217, 111 Pac. 391; *Chambers v. Van Wagner,* 32 Okla. 774, 123 Pac. 1117, and cases cited.

Finding no reversible error in the record, we recommend that the judgment be affirmed.

By the Court: It is so ordered.